Rayann Lyn OWAN, Plaintiff
and Appellant,

v.

Stephen Charles OWAN, Defendant
and Appellee.

Civil No. 950053.

Supreme Court of North Dakota.

Jan. 11, 1996.

Cathy Howe Schmitz (argued) of Schmitz Law Office, Williston, for plaintiff and appellant.

Greg W. Hennessy (argued) of Hennessy Law Office, P.C., Williston, for defendant and appellee.

MESCHKE, Justice.

Rayann Owan appeals from a divorce decree placing custody of her daughter Danika with Stephen Owan. We reverse and remand for findings about domestic violence and for reconsideration of custody accordingly.

Rayann and Stephen lived together for two years before their marriage in 1990. Their daughter Danika was born in 1991. They moved several times, going from Williston to Minnesota, back to Williston, to Arizona, and again back to Williston. The relationship between Rayann and Stephen was often turbulent.

Rayann testified that Stephen had kicked through a locked bathroom door in their apartment, had thrown a cordless phone into a wall near her, and often would put Rayann "up against the wall and hit the wall above me and scare me," while calling her names: "tramp, bitch, whore...." Rayann testified about other controlling and domineering behavior by Stephen: "he'd go through my purse and rip my purse open and take all my credit cards, and take all my money." According to Rayann, Stephen threatened to kill her if she left him, and several times threatened suicide. There was also evidence that Rayann had slapped and scratched Stephen sometimes.

Rayann sued for divorce in February 1994 and received temporary custody of Danika. Before trial in December 1994, Stephen had moved back to Arizona to be close to his family, and Rayann was pregnant by a man she intended to marry. The trial court granted the divorce, divided the marital property, and placed custody of Danika with Stephen, with Rayann to pay child support. Rayann appealed.

We conclude that the dispositive aspect of this appeal is the lack of adequate attention to the statutory presumption against placing custody with a parent who has committed domestic violence. Part of NDCC 14–09–06.2(1)(j) directs:

In awarding custody or granting rights of visitation, the court shall consider evidence of domestic violence. If the court finds credible evidence that domestic violence has occurred, this evidence creates a rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded sole or joint custody of a child. This presumption may be overcome only by clear and convincing evidence that the

best interests of the child require that parent's participation as a custodial parent. The court shall cite specific findings of fact to show that the custody or visitation arrangement best protects the child and the parent or other family or household member who is the victim of domestic violence. . . . The fact that the abused parent suffers from the effects of the abuse may not be grounds for denying that parent custody.

"Domestic violence" is defined in NDCC 14–07.1–01(2):

"Domestic violence" includes physical harm, bodily injury, sexual activity compelled by physical force, assault, or the infliction of fear of imminent physical harm, bodily injury, sexual activity compelled by physical force, or assault, not committed in self-defense, on the complaining family or household members.

■ We have applied and explained this statutory presumption against placing custody with a violent parent in a series of recent opinions, all written after the trial court's decision in this case. *See Bruner v. Hager,* 534 N.W.2d 825 (N.D.1995); *Ryan v. Flemming,* 533 N.W.2d 920 (N.D.1995); *Helbling v. Helbling,* 532 N.W.2d 650 (N.D.1995); *Krank v. Krank,* 529 N.W.2d 844 (N.D.1995); *Heck v. Reed,* 529 N.W.2d 155 (N.D.1995). The effect of the statutory presumption makes domestic violence the paramount factor in a custodial placement when there is credible evidence of it. *Bruner,* 534 N.W.2d at 828; *Helbling,* 532 N.W.2d at 652. To rebut the presumption, the violent parent must prove by clear and convincing evidence that other circumstances require that the child be placed with the violent parent rather than the non-violent parent. *Bruner,* 534 N.W.2d at 828; *Krank,* 529 N.W.2d at 848; *Heck,* 529 N.W.2d at 162. As *Helbling,* 532 N.W.2d at 652–653, held, when there is evidence of domestic violence, the trial court must make specific findings about it.

■ On this record, the trial court made only a single finding from the opinion of Stephen's social-worker witness to minimize Stephen's violent conduct:

The Court gives [Stephen's social-worker witness's] testimony and opinion a great deal of credibility. The Court has reviewed North Dakota Century Code 14–09–06.2 and does concur with Mr. Yockim's findings as follows: the allegations of Stephen's physical altercations appear to be minor. In most cases, [Rayann] has acted and [Stephen] has reacted.

This finding is unsatisfactory for several reasons.

First, the trial court improperly relied upon Stephen's social-worker witness to assess trial testimony as an expert on Stephen's violent conduct. To justify the trial court's abbreviated analysis about violence, Stephen's brief in this court also relied on testimony by that witness, Jim Yockim:

I was aware of the allegation, the verbal allegations, the abuse, the breaking the door in, the whole thing. Again it seemed to be situational in nature, situational in terms of the marital discord rather than a pattern, I guess, in Stephen's life. There were allegations on the other side in terms of scratching and those kinds of things, too, and I did not think that—again, I dealt with him in terms of being situational in the marital discord.

\* \* \*

Q. Did you analyze that violent behavior in light of the presumption in the Century Code that absent other factors, the non-violent party is given a nod so to speak under the categories that are analyzed? How did you weigh that, if at all?

A. I guess I did not feel that it met the same level of violent behavior that I would, I guess I—

Q. You didn't apply the presumption basically, is that fair?

A. I don't think that I held that what had happened in that case as meeting that standard that the Court is looking for as a determining factor.

Stephen principally urges here that we affirm the trial court's finding because

Mr. Yockim's written home study makes no finding or suggestion of credible evidence of domestic violence by either party.

Rayann responds, "If one . . . *assumes* the Court intended by its statement as to Yock-

im's credibility to *adopt* the findings of Stephen's expert, more is required." We agree.

■ The trial court cannot delegate its specific statutory responsibility to weigh the evidence and make findings on domestic violence. Generally, a "court cannot make the report of an independent investigator the conclusive basis of its decision regarding the custody of the children. The reason for this rule is usually expressed by the phrase that the trial court cannot delegate to anyone the power to decide questions of child custody." Annot., *Consideration of investigation by welfare agency or the like in making or modifying award as between parents of custody of children,* 35 A.L.R.2d 629, 651 (1954); *see also* 24 Am.Jur.2d *Divorce and Separation* § 984 (1983) ("The court cannot delegate to anyone the power to decide custody; it cannot make the report and conclusions of its investigator conclusive."); 32 C.J.S. *Evidence* § 569(11) (1964) (expert's opinion on custody is not conclusive, and its weight is for the trier of fact). That concept is particularly important for domestic violence. *Compare Asendorf v. M.S.S.,* 342 N.W.2d 203, 208 n. 1 (N.D.1983) (in termination of parental rights, report and testimony of a social worker is treated the same as other evidence but is not conclusive on the matter); *Bjerke v. D.T.,* 248 N.W.2d 808, 814 (N.D.1976) ("We are sensitive to the argument that it is dangerous to allow the judgment of social workers to determine how a family is run."); *In re R.M.B.,* 402 N.W.2d 912, 918 (N.D.1987) (same); *McBeth v. J.J.H.,* 343 N.W.2d 355, 360 (N.D.1984) (same); *In re J.K.S.,* 274 N.W.2d 244, 249 (N.D.1979) (same). Here, the statute directs the trial court itself to weigh the testimony about domestic violence, to make specific findings about it, and to "show" that the custodial arrangement "protects the child and the parent ... who is the victim of domestic violence." NDCC 14–09–06.2(1)(j). Those duties cannot be delegated by the trial court.

■ Nor does the trial court's finding permit adequate review of the reason for minimizing the extensive evidence of Stephen's violent conduct in this record. In *Bruner,* 534 N.W.2d at 826–827, we cautioned against findings that merely minimize a violent par-

ent's conduct, without making specific findings about that conduct. As we stressed in *Krank,* and again in *Helbling,* the extent of the evidence of physical abuse in a case like this must be specifically addressed and dealt with in the findings.

■ The trial court also failed to make findings about the slapping and scratching that Stephen alleged Rayann did. Again:

> When there is credible evidence of domestic violence on the part of both parents, findings that ambiguously allude to the issue are insufficient to support a custody award. Rather, the trial court must make detailed findings on the domestic violence issue.

*Krank,* 529 N.W.2d at 850. We have detailed the procedure to be used when there is evidence of domestic violence by both parents:

> [I]f domestic violence has been committed by both parents, the trial court [must] measure the amount and extent of domestic violence inflicted by both parents. If the amount and extent of domestic violence inflicted by one parent is significantly greater than that inflicted by the other, the statutory presumption against awarding custody to the perpetrator will apply only to the parent who has inflicted the greater domestic violence, and will not apply to the parent who has inflicted the lesser. However, if the trial court finds that the amount and extent of the violence inflicted by one parent is roughly proportional to the violence inflicted by the other parent, and both parents are otherwise found to be fit parents, the presumption against awarding custody to either perpetrating parent ceases to exist. In such a case, the trial court is not bound by any presumption, but may consider the remaining customary best-interests factors in making its custody decision.

*Krank,* 529 N.W.2d at 850 (footnote omitted); *see also Helbling,* 532 N.W.2d at 653. If the violence between parents is proportional, the trial court should also consider, together with the other usual factors for custody, which parent is least likely to continue to expose the child to violence. Here, though, the trial court failed to measure or weigh the violent

conduct described in the testimony, nor did it measure the propensity of each of these parents for continued violence.

The trial court's findings on domestic violence are insufficient for us to review its decision to place custody with Stephen. Accordingly, we reverse and remand for further findings and reconsideration of the custodial placement.

VANDE WALLE, C.J., and LEVINE and NEUMANN, JJ., concur.

SANDSTROM, Justice, dissenting.

"It is universally recognized by all courts that in fixing the custody of a child, the consideration of the welfare and interests of the child outweigh all other considerations."

42 Am.Jur.2d *Infants* § 43.

"[T]he court's primary concern is the well-being of the child and its physical, mental, and moral development in an environment most adapted to and promotive of its full growth. All other considerations will be deferred or subordinated to the child's welfare...."

Annot., 15 A.L.R.2d 432, 435 (1951) (citations omitted).

This is a child custody case. Yet, nowhere does the majority even discuss "the best interests of the child." The parent-child relationship is fundamental. *Lassiter v. Dept. of Social Services,* 452 U.S. 18, 27, 101 S.Ct. 2153, 2159, 68 L.Ed.2d 640 (1981). Because the parent-child relationship may be altered only in the best interests of the child, and because the majority analysis appears infirm, I respectfully dissent.

Domestic violence is unacceptable. *Bruner v. Hager,* 534 N.W.2d 825, 829 (N.D.1995)(Sandstrom, J., concurring in the result). The goal of punishing perpetrators of domestic violence, however, cannot justify a child-custody award that is, in fact, not in the best interests of the child. Certainly domestic violence should be considered as it affects the best interests of the child. To the extent the majority analysis fails to limit child-custody-case consideration of domestic violence to the extent it in fact affects the best interests of the child, it is constitutionally infirm.

If the majority is saying, under the current law, a finding of domestic violence preempts consideration of all other factors relating to the best interests of the child, the legislation is remarkably parallel to that struck down as unconstitutional in *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972).

The United States Supreme Court explained the Illinois law:

"Under Illinois law, therefore, while the children of all parents can be taken from them in neglect proceedings, that is only after notice, hearing, and proof of such unfitness as a parent as amounts to neglect, an unwed father is uniquely subject to the more simplistic dependency proceeding. By use of this proceeding, the State, on showing that the father was not married to the mother, need not prove unfitness in fact, because it is presumed at law. Thus, the unwed father's claim of parental qualification is avoided as 'irrelevant.'"

*Stanley* at 650, 92 S.Ct. at 1212. The State of Illinois argued in its brief:

"'[T]he only relevant consideration in determining the propriety of governmental intervention in the raising of children is whether the best interests of the child are served by such intervention.

"'In effect, Illinois has imposed a statutory presumption that the best interests of a particular group of children necessitates some governmental supervision in certain clearly defined situations. The group of children who are illegitimate are distinguishable from legitimate children not so much by their status at birth as by the factual differences in their upbringing. While a legitimate child usually is raised by both parents with the attendant familial relationships and a firm concept of home and identity, the illegitimate child normally knows only one parent—the mother....'"

*Stanley* at 653 n.5, 92 S.Ct. at 1213 n.5. The Court noted:

"In *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), we found

a scheme repugnant to the Due Process Clause because it deprived a driver of his license without reference to the very factor (there fault in driving, here fitness as a parent) that the State itself deemed fundamental to its statutory scheme. Illinois would avoid the self-contradiction that rendered the Georgia license suspension system invalid by arguing that Stanley and all other unmarried fathers can reasonably be presumed to be unqualified to raise their children.

> "It may be, as the State insists, that most unmarried fathers are unsuitable and neglectful parents. It may also be that Stanley is such a parent and that his children should be placed in other hands. But all unmarried fathers are not in this category; some are wholly suited to have custody of their children. This much the State readily concedes, and nothing in this record indicates that Stanley is or has been a neglectful father who has not cared for his children. Given the opportunity to make his case, Stanley may have been seen to be deserving of custody of his offspring. Had this been so, the State's statutory policy would have been furthered by leaving custody in him."

*Stanley* at 653–55, 92 S.Ct. at 1213–14 (footnotes omitted). The Court concluded:

> "Despite *Bell* and *Carrington [v. Rash,* 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965)] it may be argued that unmarried fathers are so seldom fit that Illinois need not undergo the administrative inconvenience of inquiry in any case, including Stanley's. The establishment of prompt efficacious procedures to achieve legitimate state ends is a proper state interest worthy of cognizance in constitutional adjudication. But the Constitution recognizes higher values than speed and efficiency. Indeed, one might fairly say of the Bill of Rights in general, and the Due Process Clause in particular, that they were designed to protect the fragile values of a vulnerable citizenry from the overbearing concern for efficiency and efficacy that may characterize praiseworthy government officials no less, and perhaps more, than mediocre ones.

> "Procedure by presumption is always cheaper and easier than individualized determination. But when, as here, the procedure forecloses the determinative issues of competence and care, when it explicitly disdains present realities in deference to past formalities, it needlessly risks running roughshod over the important interests of both parent and child. It therefore cannot stand."

*Stanley* at 656–57, 92 S.Ct. at 1215 (footnotes omitted).

Because the majority ignores the fundamental need to determine the best interests of the child *in fact,* I dissent.