James ENGH, Plaintiff and Appellee

v.

Tamara Denise JENSEN, f/k/a Tamara Denise Palmer, Defendant and Appellant.

Civil No. 950348.

Supreme Court of North Dakota.

May 14, 1996.

John S. Steinberger, Jr., Kenmare, for plaintiff and appellee.

Carl O. Flagstad, Jr., Flagstad and Farhart, Minot, for defendant and appellant.

VANDE WALLE, Chief Justice.

Tamara Jensen appealed from a judgment placing custody of her three children with James Engh, the children's father. We reverse the judgment and remand to the trial court for specific findings and for reconsideration of custody.

Tamara and James met in Nephi, Utah. From 1980 until 1987, they were involved in a relationship but never married. During their relationship, Tamara and James had three children. They frequently moved depending upon James' employment in the oil fields. After their separation in 1987, Tamara cared for the children in Utah, until she was sentenced for the crime of distribution of marijuana and ordered to undergo drug and alcohol evaluation. Prior to serving her sentence and receiving treatment, Tamara arranged for James to care for the children for the 90

days of her sentence, rather than placing the children in foster care. In August 1991, James took the children to Sherwood, North Dakota, where he had been living. Tamara's rehabilitation extended past the anticipated 90 days, so James continued caring for the children in North Dakota. In July 1992, after Tamara's release, James requested a determination of custody.

The trial court issued an interim order and order to show cause why James should not have temporary custody of the children pending a final determination. In response, Tamara challenged James' paternity of the two older children. The trial court ordered genetic testing but placed temporary custody of the children with James, who later was determined to be the children's natural father.

In November 1994, after a bench trial, the trial court placed legal and physical custody of the three children with James and granted visitation to Tamara. In May 1995, at a hearing to determine child support, James' attorney requested that the trial court make additional findings relating to child custody in light of appellate decisions considering the 1993 legislative amendments to section 14–09–06.2(1)(j), NDCC. After taking the request under advisement, the trial court issued a memorandum and order confirming the custody decision and awarding child support. On appeal, Tamara argues that the trial court did not make specific findings of domestic violence, and that the trial court failed to apply the rebuttable presumption under section 14–09–06.2(1)(j), NDCC. We agree.

A trial court's custody determination is a finding of fact which we will not reverse on appeal unless the finding is clearly erroneous. N.D.R. Civ. P. 52(a); *Krank v. Krank*, 541 N.W.2d 714 (N.D.1996). A finding of fact is clearly erroneous " 'if it is induced by an erroneous view of the law, if no evidence exists to support it, or if the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made.' " *Bruner v. Hager*, 534 N.W.2d 825, 826 (N.D.1995) [quoting *Heck v. Reed*, 529 N.W.2d 155, 159 (N.D.1995) ].

When credible evidence of domestic violence is presented in a child custody dis-

pute, such evidence "creates a rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded sole or joint custody of a child." N.D. Cent. Code § 14–09–06.2(1)(j). We have interpreted the statutory presumption, in essence, to make domestic violence the paramount factor to consider in a custody decision. *Owan v. Owan*, 541 N.W.2d 719 (N.D.1996) [citing recent opinions analyzing the presumption]. The rebuttable presumption outweighs other factors and prevents the abusive parent from obtaining custody of the child, unless, in the case of two fit parents, the violent parent proves "by clear and convincing evidence that the best interests of the child require" that the perpetrator receive custody. N.D. Cent. Code § 14–09–06.2(1)(j); *Helbling v. Helbling*, 532 N.W.2d 650 (N.D.1995); *Heck v. Reed*, 529 N.W.2d 155 (N.D.1995). "The practical effect of the court's interpretation of the statute is that the perpetrator of domestic violence cannot be awarded custody of a child unless the other parent is found to be an unfit parent." *Krank v. Krank*, 529 N.W.2d 844, 848 (N.D.1995) [citing *Heck*, 529 N.W.2d at 166 (VandeWalle, C.J., concurring in result) ].

Here, although the trial court questioned Tamara's credibility, referring to some of her allegations as "unfounded" or "exaggerated," the trial court determined that domestic violence indeed occurred during James' and Tamara's "stormy" relationship. In its memorandum, the trial court emphasized there was "no question that there was domestic violence between James and Tamara while they lived together." The trial court alluded to domestic violence on the part of both parties, but the trial court did not make specific findings. When there is evidence of domestic violence by both parents:

"[T]he trial court [must] measure the amount and extent of domestic violence inflicted by both parents. If the amount and extent of domestic violence inflicted by one parent is significantly greater than that inflicted by the other, the statutory presumption against awarding custody to the perpetrator will apply only to the parent who has inflicted the greater domestic violence, and will not apply to the parent

who has inflicted the lesser. However, if the trial court finds that the amount and extent of the violence inflicted by one parent is roughly proportional to the violence inflicted by the other parent, and both parents are otherwise found to be fit parents, the presumption against awarding custody to either perpetrating parent ceases to exist. In such a case, the trial court is not bound by any presumption, but may consider the remaining customary best-interests factors in making its custody decision." [1]

*Krank*, 529 N.W.2d at 850 (footnote omitted).

■ Here, the trial court indicated that James inflicted the greater domestic violence. Indeed, the record reflects that James was the more violent parent, but the trial court did not make specific findings. The statutory presumption requires the trial court to make specific findings to show that the custody placement is in the best interests of the child. N.D. Cent. Code § 14–09–06.2(1)(j); *Krank, supra* [stating that the findings are adequately specific if we can understand the factual basis for the decision from the findings]. After our review of the record, we conclude that the trial court's findings as to the occurrence and extent of domestic violence are insufficient to review the custody decision.

The trial court implied in its memorandum opinions that James was the more violent parent. Notwithstanding its implication that James was significantly more violent, the trial court gave three explanations supporting its custody decision: James did not abuse the children; "the cause" for violence was eliminated since James and Tamara no longer live together; and James offers the children stability. Because we believe that these circumstances do not rebut the statutory presumption, and since the issues are likely to surface again on remand, they warrant discussion.

■■ We explained in *Heck* that section 14–09–06.2(1)(j), NDCC, precludes a court from weighing an absence of domestic violence against the children as one of the factors which may rebut the presumption since the presumption arises "whenever violence is directed at *any* member of a household or family, not only when a child is the direct victim of the violence." *Heck*, 529 N.W.2d at 163 [interpreting section 14–07.1–01, NDCC, which defines "domestic violence"]. Under the presumption, "[t]he legislature intended that courts *presume* that *any* domestic violence negatively impacts the best interests of the children." *Id.* at 164; *Bruner*, 534 N.W.2d at 828 [stating "the fact that a parent has not abused the child, only the child's other parent, does not avoid the effect of the presumption"]. Here, the trial court acknowledged that James may be violent. But, since there was no evidence "that James at any time physically or sexually abused the children," or evidence of "actual physical abuse toward the children" while the children had been living with James, the trial court determined that the children were "not being placed at any great risk for domestic violence by living with James." After reconsidering its custodial placement, the trial court recognized that James had not undergone any counseling for domestic violence. "In hindsight," the trial court determined that "it would be a good precaution to have James evaluated for domestic violence and to undergo any counseling if recommended." As in *Heck* and *Bruner*, the lack of violence toward the children does not rebut the presumption.

■ As another justification for the custodial placement, the trial court ascertained that, since James and Tamara no longer live together, "the cause for domestic violence" has been eliminated. We disagree. We have recognized that domestic violence is learned behavior that possibly can be unlearned. *Krank*, 529 N.W.2d at 849–50 [stating domes-

1. Although this application of the rebuttable presumption has been referred to as "a rather awkward process for applying, or not applying, the rebuttable presumption" when there is evidence of domestic violence by both parents, see Kathleen B. Garner, Comment, *Infants—Parent and Child: Applying the Rebuttable Presumption Against Awarding Custody to Perpetrators of Do-*

*mestic Violence*, 72 N.D.L.Rev. 155, 165 (1996), we are required to apply a statute, section 14–09–06.2(1)(j), NDCC, which seems to assume that only one parent can ever or will ever commit acts of domestic violence. *Krank* and other cases that have come before us belie that naive assumption.

tic violence is a learned behavioral pattern and, in some instances, a single act may constitute domestic violence]; *Heck*, 529 N.W.2d at 164–65 ["Domestic violence is not caused by stress in the perpetrator's life, alcohol consumption, or a particular victim's propensity to push a perpetrator's buttons. Rather, domestic violence is a learned pattern of behavior aimed at gaining a victim's compliance." (citations omitted) ]. While separation may be more successful than rehabilitation in ceasing the violence, separation "does not change the psychological characteristics of the parties." *Krank*, 541 N.W.2d at 718. Here, the trial court departed from its position, that the cause for domestic violence was eliminated by the separation, when it later ordered James to undergo an evaluation for violence. James' and Tamara's separation was insufficient evidence that domestic violence would not likely occur in the future.

■ In addition to considering evidence of domestic violence, the trial court weighed some of the remaining statutory factors to favor James as the custodial parent. As we have interpreted since the 1993 Legislature's amendment to section 14–09–06.2(1)(j), a trial court cannot treat the rebuttable presumption as simply another factor to be weighed with the remaining best-interests factors. *Bruner, supra; Krank, supra; Heck, supra.* As Justice Levine explained in *Heck*, it takes "compelling or exceptional circumstances under NDCC § 14–09–06.2(1)(j) to award custody to a perpetrator of domestic violence, and certainly something more than the customary weighing and reciting of the factors found in NDCC § 14–09–06.2(1)(a) through (i), (k), (*l* )." *Heck*, 529 N.W.2d at 162.

■ In this instance, the trial court discussed James' and Tamara's involvement with drugs and their disregard for the law. The trial court also compared the stability each parent would provide for the children. For example, the trial court described Tamara's lifestyle as "chaotic and impulsive," lacking "any organization or stability." While under Tamara's care, the children appeared undernourished, the eldest child was absent 70 days from kindergarten, and the children were often left alone. Under James' care, the children appear well-rested, regu-larly attend school, and interact with teachers and other children. The trial court recognized that James has regular employment, whereas Tamara has temporary employment in Minot, North Dakota, and returns on occasion to Utah where her current husband resides.

After reviewing *Heck* and *Krank I*, the trial court stated that it "still believe[d] that it is in the best interests of the children that custody be given to James." Notwithstanding the domestic violence, the trial court stated that it believed that James was the "fit and proper parent to have custody of the children." The trial court "viewed the stability of James against Tamara's instability" and determined that an unstable environment would not be "the most beneficial for the children." We believe that the trial court's reasoning merely reflects the customary weighing of the best-interest factors which was legislatively overruled in 1993 and, thus, is insufficient to support the custody decision.

■ On remand, the trial court must make specific findings of domestic violence. If the presumption is triggered, the violent parent must show by clear and convincing evidence that compelling circumstances "require" the violent parent receive custody of the children. The trial court's reasoning, that violence was not inflicted toward the children, that the parties are separated, and that James provides stability which is more beneficial for the children, are insufficient to rebut the presumption. We reverse and remand for the trial court to make specific findings and to reconsider its custody decision.

MESCHKE and MARING, JJ., and RALPH J. ERICKSTAD, Surrogate Judge, concur.

RALPH J. ERICKSTAD, Surrogate Judge, sitting in place of NEUMANN, J., disqualified.

SANDSTROM, Justice, concurring specially.

Consistent with my previous opinions, I would reverse and remand to the district

court for specific findings as to domestic violence by each parent and, if necessary, for findings whether clear and convincing evidence requires participation as a custodial parent by a perpetrator of domestic violence. *See Heck v. Reed,* 529 N.W.2d 155, 166–67 (N.D.1995) (Sandstrom, J., concurring in the result); *Bruner v. Hager,* 534 N.W.2d 825, 829 (N.D.1995) (Sandstrom, J., concurring in the result); *Krank v. Krank,* 541 N.W.2d 714, 719 (N.D.1996) (Sandstrom, J., dissenting); *Owan v. Owan,* 541 N.W.2d 719, 723 (N.D.1996) (Sandstrom, J., dissenting).