David **ANDERSON**, Plaintiff and Appellant,

v.

Kimberly **HENSRUD**, f/k/a Anderson, Defendant and Appellee.

Civ. No. 950357.

Supreme Court of North Dakota.

May 29, 1996.

Jon J. Jensen, Pearson, Christensen, Larivee, Clapp, Fiedler & Fischer, Grand Forks, for plaintiff and appellant.

Janis M. DeRemer, Grand Forks, for defendant and appellee.

VANDE WALLE, Chief Justice.

David Anderson appealed from a district court order denying his motion for change of custody. Because we conclude that the trial court erred in its interpretation of section 14–09–06.2(1)(j), NDCC, we reverse and remand to the trial court.

In June 1992, David Anderson and Kimberly Hensrud were granted a divorce after two and one-half years of marriage. During the marriage, David and Kimberly had one child, Kelsie, born May 29, 1990. At the time of the original custody determination, the trial court found that both parents were fit and had good relationships with Kelsie. The trial court granted primary physical custody to Kimberly with reasonable visitation to David.

For its custody decision, the trial court primarily relied upon Kelsie's very close relationship with her older sister, Sydney, Kimberly's child from a previous marriage. The trial court determined that it would not be in

the best interests of the children to separate them and that such a separation would be inappropriate. In its original memorandum decision, the trial court acknowledged that Kimberly was a recovering alcoholic and had several "dysfunctional relationships with men," but the trial court recognized that Kimberly was "attempting to obtain friends who will not abuse her physically, mentally, sexually, or emotionally." The trial court cautioned that Kimberly's continued custody would depend upon her ability "to remain sober and to establish relationships that are not destructive, either to herself or that would endanger the mental or physical health of Kelsie."

In August 1995, David moved for a modification of custody. David argued that violence allegedly committed by Kimberly upon men with whom she had relationships triggered the domestic violence presumption under section 14–09–06.2(1)(j), NDCC. The statute provides that if the court "finds credible evidence that domestic violence has occurred, this evidence creates a rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded sole or joint custody of a child." To overcome the presumption, the violent parent must prove "by clear and convincing evidence that the best interests of the child *require* that parent's participation as a custodial parent." N.D. Cent.Code § 14–09–06.2(1)(j) [emphasis added]; *Bruner v. Hager*, 547 N.W.2d 551 (N.D.1996). David asserted that, absent Kimberly's proof of clear and convincing evidence that circumstances require that she maintain custody of Kelsie, custody should be transferred to him.

■ On appeal, findings on matters of child custody, including the decision to modify an original custodial placement, are findings of fact which we will not reverse unless clearly erroneous. N.D.R. Civ. P. 52(a); *McDonough v. Murphy*, 539 N.W.2d 313 (N.D. 1995); *Heck v. Reed*, 529 N.W.2d 155 (N.D. 1995). A finding of fact is clearly erroneous "if it is induced by an erroneous view of the law, if no evidence exists to support it, or if the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made." *Heck*, 529 N.W.2d

at 159. The issues on this appeal require us to interpret section 14–09–06.2(1)(j), NDCC, and determine how it is to be properly applied. The interpretation of a statute is a question of law, which we fully review on appeal. *Id.* at 160.

■ The trial court acknowledged that this was not an initial custody determination. Unlike an initial custody determination in which the trial court considers only the best interests and welfare of the child, a motion to modify custody requires a two-step analysis. *Van Dyke v. Van Dyke*, 538 N.W.2d 197 (N.D.1995). First, the trial court must determine whether there has been a significant change in circumstances since the original custodial placement. *McDonough, supra.* If there has been a significant change in circumstances, then the trial court must determine whether the significant change compels, in the child's best interests, a change in custody. *Id.* The two-step analysis reflects the "doctrinal aversion to changing the custody of a happy child who has been living with one parent for a substantial time." *Alvarez v. Carlson*, 524 N.W.2d 584, 590 (N.D.1994). Here, the trial court articulated what it perceived to be competing considerations in this case: the context of a modification proceeding which presumes that the original custodial placement was correct, and the statutory presumption against awarding custody to a perpetrator of domestic violence absent circumstances which require that the violent parent receive custody.

■ Competing considerations may exist, but the statutory presumption against awarding custody to a perpetrator of domestic violence is a presumption which can be overcome only by clear and convincing evidence that other circumstances require the child be placed with the violent parent. *Owan v. Owan*, 541 N.W.2d 719 (N.D.1996). It applies over a presumption that the original custodial placement was correct, a presumption which may be overcome simply by proving by credible evidence that its nonexistence is more probable than its existence. N.D.R. Evid. 301(a). Furthermore, if presumptions are inconsistent, the presumption applies that is founded upon weightier considerations of policy. N.D.R. Evid. 301(b).

In view of the legislative history surrounding section 14–09–06.2(1)(j), NDCC, the reasons for its enactment, and decisions such as *Heck v. Reed*, 529 N.W.2d 155 (N.D.1995), there is no doubt that the presumption against awarding custody of a child to a violent parent is founded upon weightier considerations of policy than is a presumption that the original custodial placement was correct.

■ But, the trial court avoided the apparent conflict by determining that domestic violence did not exist in this case. Of course, a court does not reach the consideration of the best interest factors, which includes the domestic violence presumption, unless the court first finds as a condition precedent a significant change in circumstances. *Wright v. Wright*, 431 N.W.2d 301, 304 (N.D.1988). In this instance, the trial court discussed the competing considerations without specifically finding whether a change in circumstances exists. Because the trial court's determination was based upon an erroneous interpretation of the statute, we reverse and remand to the trial court for further proceedings consistent with this opinion. Should the trial court determine that domestic violence took place, we believe that such an occurrence following the original custody decree constitutes a change warranting consideration of the best interest factors under section 14–09–06.2, NDCC, with evidence of domestic violence being the paramount factor. *Bruner v. Hager*, 547 N.W.2d 551 (N.D.1996) [referring to evidence of domestic violence as the paramount factor].

There was testimony offered that violent conduct occurred between Kimberly and two men with whom she dated and, arguably, resided. The trial court found that the domestic violence presumption did not apply to Kimberly because the physical harm was not directed at a parent or child. We believe that the trial court's reading of the pertinent statutes is too narrow. Section 14–09–06.2(1)(j), NDCC, directs us to section 14–07.1–01, NDCC, for the definition of "domestic violence." "Domestic violence" includes "physical harm, bodily injury, . . . assault, or the infliction of fear of imminent physical harm, bodily injury, . . . or assault, not committed in self-defense, on . . . family or household members." N.D. Cent.Code § 14–07.1–01(2). Section 14–07.1–01(4), NDCC, defines "family or household member," to include, in addition to a parent or child, "persons who are in a dating relationship," or "persons who are presently residing together or who have resided together in the past."

■ In *Heck v. Reed*, 529 N.W.2d 155, 163 (N.D.1995), we interpreted that, by choosing the term "family or household member" when defining domestic violence, the legislature intended the presumption to be triggered "whenever violence is directed at *any* member of a household or family. . . ." *See also Engh v. Jensen*, 547 N.W.2d 922 (N.D. 1996) [recognizing that a lack of violence toward the children fails to rebut the presumption]; *Bruner v. Hager*, 534 N.W.2d 825, 828 (N.D.1995) ["the fact that a parent has not abused the child . . . does not avoid the effect of the presumption"]. Under our interpretation of the statute, we believe that the legislature "intended that courts *presume* that *any* domestic violence negatively impacts the best interests of the children." *Heck*, 529 N.W.2d at 164. Thus, the presumption is not confined, as the trial court found in this case, to circumstances in which a parent or child is the direct victim of the violence.

■ In addition, the trial court reasoned that Kimberly's conduct did not constitute domestic violence because it did not rise to the "quantity or quantum . . . as contemplated by the statutes." But, section 14–09–06.2(1)(j) does not specify "the amount or extent of domestic violence required to trigger the statutory presumption. . . . Under the plain wording of the statute, a single act of domestic violence may suffice to invoke the presumption." *Krank v. Krank*, 529 N.W.2d 844, 850 (N.D.1995). Thus, domestic violence can be exhibited through a pattern of conduct or by a single act.

■ Instead of finding evidence of domestic violence, the trial court characterized Kimberly's behavior as "isolated incidents" which occurred under circumstances in which Kimberly was either baited or provoked by individuals who were later subject to protection orders. We have rejected similar find-

ings in the past. In *Heck*, we explained that domestic violence is not caused by stress or another's "propensity to push a perpetrator's buttons." *Heck*, 529 N.W.2d at 164. Rather, domestic violence is learned, assaultive or controlling behavior aimed at gaining another's compliance. *Id.*

We distinguish the case before us from *Ryan v. Flemming*, 533 N.W.2d 920 (N.D. 1995). In *Ryan*, we affirmed a trial court's finding of insufficient evidence of domestic violence to raise the presumption. We concluded that the court weighed conflicting evidence and decided that the acts were insufficient. In *Ryan*, the acts did not inflict actual injury or fear of imminent harm. They were viewable as demonstrative and did not correspond with the statutory definition of domestic violence.

Here, the trial court's memorandum decision indicates that the trial court believed that Kimberly was violent and that her conduct exceeded demonstrative behavior. Kimberly admitted to striking men with whom she had relationships, particularly when the relationships had deteriorated. The trial court acknowledged that Kimberly has a temper and expressed concern with the impact that "a continuous stream of live-in boyfriends who are alcoholics, abusive, or simply looking for a temporary arrangement to satisfy their sexual needs" has on children's development. *See Heck*, 529 N.W.2d at 166 (VandeWalle, C.J., concurring in result, and cautioning that "[a] custodial parent who has a continuing relationship with a perpetrator of domestic violence should expect to have custody of that child transferred to the noncustodial parent unless there is clear and convincing evidence that the best interests of the child require the continued participation as a custodial parent.")

As long as Kimberly's conduct comports with the statutory definition of "domestic violence," including that she was not acting in self-defense, the trial court must apply the presumption. *See* N.D. Cent.Code § 14–09–06.2(1)(j) ["In awarding custody or granting rights of visitation, the court *shall* consider evidence of domestic violence." (emphasis

added)]. We conclude that the trial court's bases for determining that Kimberly's conduct did not constitute domestic violence are inconsistent with the statute.

Because the trial court made its findings using an erroneous definition of "domestic violence," we reverse and remand to the trial court for further findings and for reconsideration of the request for modification of custody.

MESCHKE, MARING and NEUMANN, JJ.

SANDSTROM, Justice, concurring specially.

Although I continue to disagree with the majority in significant ways about the interpretation and application of the domestic violence presumption of N.D.C.C. § 14–09–06.2(1)(j), *see, e.g., Heck v. Reed*, 529 N.W.2d 155, 166–67 (N.D.1995) (Sandstrom, J., concurring in the result); *Bruner v. Hager*, 534 N.W.2d 825, 829 (N.D.1995) (Sandstrom, J., concurring in the result); *Krank v. Krank*, 541 N.W.2d 714, 719 (N.D.1996) (Sandstrom, J., dissenting); *Owan v. Owan*, 541 N.W.2d 719, 723 (N.D.1996) (Sandstrom, J., dissenting); *Engh v. Jensen*, 547 N.W.2d 922 (N.D. 1996) (Sandstrom, J., concurring specially), the majority correctly reverses here.

I specifically join in the majority's application of the term "family or household member."

Clearly, also, the victim's "pushing the buttons" of the perpetrator does not justify or excuse domestic violence.

In addition, custodial parents are properly admonished as to the potential consequences of a continuing relationship with the perpetrator of domestic violence.

I concur in the result reached.