2005 ND 82

**Shawn HANSON, n/k/a Shawn Johnson, Plaintiff and Appellee**

v.

**David HANSON, Defendant and Appellant.**

**No. 20040275.**

Supreme Court of North Dakota.

April 26, 2005.

Michael L. Gjesdahl, Gjesdahl & Associates, Fargo, ND, for plaintiff and appellee.

Monty G. Mertz, Mertz Law Office, Fargo, ND, for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] David Hanson appeals from a fourth amended divorce judgment denying his motion for a change of custody, visitation upon request, and attorney's fees and ordering him to pay increased child support. Concluding the district court erred in calculating the child support obligation, we affirm in part and reverse in part and remand the fourth amended judgment to the district court.

## I

[¶2] David and Shawn Hanson were married on October 24, 1981, and divorced on August 4, 1995. They have two children from their marriage. The children were four and six years old at the time of the divorce. Shawn Hanson, now known as Shawn Johnson, was awarded custody of the two children, and David Hanson received liberal and flexible visitation rights. Hanson currently lives in Duluth, Minnesota, and earns approximately $336,731 to $350,000 a year as a doctor. Johnson lives in Fargo, North Dakota. Both are remarried.

[¶3] On September 3, 2003, Hanson moved to amend the judgment of divorce to change custody of the children from Johnson to himself and to order Johnson to pay child support. He requested that a custody investigator and guardian ad litem be appointed for the children. Hanson alleged that there had been a material change in circumstances since the divorce judgment and that the children's present environment may endanger their physical or emotional health and impair their emotional development. On November 17, 2003, the district court concluded that Hanson had made a prima facie showing of changed circumstances and ordered a full evidentiary hearing. The district court appointed a custody investigator, but declined to appoint a guardian ad litem.

[¶4] The motion was heard on June 17 and 18, 2004, and an order for entry of a fourth amended divorce judgment was entered on July 30, 2004. The district court denied Hanson's motion for change of custody and ordered him to pay $4,400 per month in child support until the older child graduates from high school or attains the age of nineteen. After the older child graduates from high school or turns nineteen, the fourth amended judgment provides that Hanson's child support obligation will drop to $2,531 per month until the younger child graduates from high school or attains the age of nineteen. The district court denied Hanson's request to have visitation upon request, ordered scheduled visitation, and directed both parties to pay their own attorney's fees.

[¶5] Hanson appeals, arguing the district court erred in deciding the fourth amended divorce judgment.

[¶6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. §§ 28–27–01, 28–27–02. The appeal was timely under N.D.R.App.P. 4(a).

## II

[¶7] Hanson argues the district court erred in not ordering a change of custody.

[¶8] The party seeking to modify a custody order bears the burden of showing that a change of custody is required. *Anderson v. Resler*, 2000 ND 183, ¶8, 618 N.W.2d 480. A district court's "decision to modify custody is a finding of fact which will not be overturned unless it is clearly erroneous." *Hanson v. Hanson*, 2003 ND 20, ¶8, 656 N.W.2d 656. "A finding of fact is clearly erroneous if there is no evidence to support it, if it is clear to the reviewing court that a mistake has been made, or if the finding is induced by an erroneous view of the law." *Id.*

[¶9] The court may modify a prior custody order after the two-year period following the date of entry of an order establishing custody if the court finds:

a. On the basis of facts that have arisen since the prior order or which were unknown to the court at the time of the prior order, a material change has occurred in the circum-

stances of the child or the parties; and

b. The modification is necessary to serve the best interest of the child.

N.D.C.C. § 14–09–06.6(6).

[¶ 10] Hanson argues the change in circumstances includes, among other factors, frustration of visitation, the withholding of information relating to the children, Johnson's remarriage, and Johnson's attendance at a different church than the children attend.

■ [¶ 11] The district court found there had been a change of circumstances that included each party's remarrying and relocating, Hanson's having more children and a greatly increased income, and an increase in conflict between the parties. The district court, however, found these changes did not require a change of custody. It held that a change would be contrary to the best interest of the children. In making this finding, the district court analyzed the child custody investigator's report and the best-interest-of-the-child factors outlined in N.D.C.C. § 14–09–06.2. The district court stated, it "adopts, as its own and in its entirety, the reasoning, rationale, findings and conclusions of the Custody Investigator's Report." We have said that a district court's opportunity to observe witnesses and determine their credibility should be given great deference. *Hanson*, 2003 ND 20, ¶ 11, 656 N.W.2d 656. A district court's adoption of a child custody investigator's report, however, is not the best judicial practice. While it would have been better for the district court to consider the report and come to its own conclusions, we do not conclude there was reversible error.

[¶ 12] Hanson argues that Johnson's taking the girls out of Park Christian School and enrolling them in a Catholic school was highly detrimental to their welfare. He argues their enrollment in the Catholic school forced them to study a religion and religious practices that were incompatible with their lifelong religious training. He also argues Johnson does not support the children's religious activities because she does not attend the same church as the children.

[¶ 13] Johnson delves into a lengthy discussion regarding Hanson's religious convictions in her brief to this Court. She outlines several Bible verses regarding the relationship between men and women and stresses that Hanson takes these passages literally, and she claims he uses them as justification for paternal dominance and supremacy. She asserts that these beliefs are relevant in this custody determination. This Court has said that the "only reason for any consideration of religious beliefs when determining the best interests of the child is to take into account any harmful impact the belief system may have on the child." *Leppert v. Leppert*, 519 N.W.2d 287, 291 (N.D.1994). Johnson's lengthy narrative on Hanson's religious beliefs appears inappropriate in this context, when the district court did not discuss the issue in its findings of fact. Neither party made a clear and affirmative showing of physical or emotional harm to the children to justify restrictions on acts or practices associated with religious beliefs. *Hanson v. Hanson*, 404 N.W.2d 460, 465 (N.D.1987). The district court found that Johnson would continue to foster the children's participation and attendance with their home church and Park Christian school and that the best interest of the children strongly favors the current custodial placement.

■ [¶ 14] Hanson argues the district court did not properly weigh the preference of the children to live with him. The preference of a child who is capable of intelligently choosing between his parents for custody is a relevant factor in deter-

mining the best interest of the child, but it is only one of the factors to consider in a custody decision, and it is not usually determinative. *Barstad v. Barstad,* 499 N.W.2d 584, 588 (N.D.1993).

[¶ 15] Hanson contends that these factors, along with several others, require this Court to reverse the district court's decision. The district court followed the law, and we will not reweigh the evidence. We conclude the district court was not clearly erroneous in denying the request for change of custody.

### III

[¶ 16] Hanson argues the district court erred in not appointing a guardian ad litem for the children. A guardian ad litem may be appointed for children in custody support and visitation proceedings:

In any action for an annulment, divorce, legal separation, or other action affecting marriage, when either party has reason for special concern as to the future of the minor children, and in any action when the custody or visitation of children is contested, either party to the action may petition the court for the appointment of a guardian ad litem to represent the children concerning custody, support, and visitation.

N.D.C.C. § 14–09–06.4.

[¶ 17] The district court's "decision to proceed without a guardian ad litem will not be overturned unless the court has abused its discretion." *Hilgers v. Hilgers,* 2002 ND 173, ¶ 7, 653 N.W.2d 79. A court is not required to appoint a guardian ad litem upon a party's motion; instead, it may appoint one at its own discretion. *Id.* A guardian ad litem must be appointed, however, if the court finds an appointment necessary to protect the best interests of the child involved. N.D.R.Ct. 8.7(c).

[¶ 18] The district court stated that it considered the factors listed in N.D.R.Ct. 8.7(c) and determined a guardian ad litem was not needed. Furthermore, Hanson suggested Ben Thomas serve as guardian ad litem, and the district court ultimately had Ben Thomas serve as custody investigator. The district court did not abuse its discretion by not appointing a guardian ad litem.

### IV

[¶ 19] Hanson argues the district court erred by denying his preference for visitation upon request, setting the time frame for holiday visits, and ordering that all transfers occur at Johnson's home.

[¶ 20] A district court's decision to modify visitation is a finding of fact, which will not be reversed unless clearly erroneous. *Iverson v. Iverson,* 535 N.W.2d 739, 742 (N.D.1995). "Under N.D.C.C. § 14–05–22(2), a court must grant such rights of visitation as will enable the noncustodial parent and child to maintain a parent-child relationship, and the court may restrict or deny this right only if visitation is likely to endanger the child's physical or emotional health." *T.E.J. v. T.S.,* 2004 ND 120, ¶ 18, 681 N.W.2d 444.

[¶ 21] When parents are having a difficult time agreeing on specific times to transfer the children for visitation, the district court should set specific times and places for transferring the children at the beginning and end of each scheduled visitation. *Alvarez v. Carlson,* 524 N.W.2d 584, 591 (N.D.1994).

[¶ 22] The district court stated the high level of conflict between the parties was one of the reasons it found there was a change of circumstances. This finding by the district court, along with Hanson's having presented no evidence that visitation upon request would be in the best interest

of the children, demonstrates the district court was not clearly erroneous in denying visitation upon request.

## V

[¶ 23] Hanson argues the district court erred when it gave Johnson the sole authority to make all major decisions regarding the health, education, welfare, and upbringing of their minor children when the parties cannot agree.

[¶ 24] This Court has held, shared "decision[-]making authority can be successful only where the parties have demonstrated an ability and willingness to cooperate in the children's best interests." *Zuger v. Zuger*, 1997 ND 97, ¶ 34, 563 N.W.2d 804. The Court in *Zuger* held it was important to have all the major decision-making power in the custodial parent when the parties continuously create conflict. *Id.*

[¶ 25] Because of the high level of conflict between the parties, the district court did not err in giving Johnson the sole authority to make all major decisions regarding the children.

## VI

[¶ 26] Hanson argues the district court erred in setting his child support obligations higher then the presumed amount set out in the Child Support Guidelines.

[¶ 27] "Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review." *Buchholz v. Buchholz*, 1999 ND 36, ¶ 11, 590 N.W.2d 215.

There is a rebuttable presumption that the amount of child support that would result from the application of the child support guidelines is the correct amount of child support. The presumption may be rebutted if a preponderance of the evidence in a contested matter establishes, applying criteria established by the public authority which take into consideration the best interests of the child, that the child support amount established under the guidelines is not the correct amount of child support. A written finding or a specific finding on the record must be made if the court determines that the presumption has been rebutted. The finding must:

a. State the child support amount determined through application of the guidelines;

b. Identify the criteria that rebut the presumption of correctness of that amount; and

c. State the child support amount determined after application of the criteria that rebut the presumption.

N.D.C.C. § 14–09–09.7(3).

[¶ 28] "The list of criteria for rebutting the presumption is exclusive," and the "party urging a deviation from the presumptively correct amount of child support has the burden of proof." *Schmalle v. Schmalle*, 1998 ND 201, ¶ 15, 586 N.W.2d 677. The exclusive list of the criteria for rebutting the presumption is listed at N.D. Admin. Code § 75–02–04.1–09(2).

[¶ 29] The parties agreed Hanson's net income for the purposes of child support was over $18,000 per month. The Child Support Guidelines prescribe $3,543 as the presumptively correct amount for two children for an obligor who makes $12,500 or more per month, which is the highest enumerated bracket. N.D. Admin. Code § 75–02–04.1–10. Hanson, however, has two children from his current mar-

riage living with him in his home. This would reduce Hanson's presumptively correct amount for child support for the two children to $3,050. N.D. Admin. Code §§ 75–02–04.1–06, 75–02–04.1–06.1. The district court departed upward from $3,543 to $4,400, a difference of $857. The Guidelines allow a district court to depart upward from the presumptively correct child support amount in cases that involve an obligor that earns more than $12,500 per month. The Child Support Guidelines state:

> The presumption that the amount of child support that would result from the application of this chapter, except for this subsection, is the correct amount of child support is rebutted only if a preponderance of the evidence establishes that a deviation from the guidelines is in the best interest of the supported children and:
>
> . . . .
>
> b) The increased ability of an obligor, with a monthly net income which exceeds twelve thousand five hundred dollars, to provide child support.

N.D. Admin. Code § 75–02–04.1–09(2)(b).

[¶ 30] The district court did not apply the sections of the Child Support Guidelines that consider the obligor's responsibility for children living in the same household. Hanson argues the district court was clearly erroneous in deviating from $3,543 instead of $3,050. The district court was aware that Hanson had two children living at home, but it failed to incorporate the two sections of the Child Support Guidelines that would have adjusted Hanson's presumptively correct obligation downward. The district court did not err by departing upward, because Hanson's monthly net income was greater than $12,500, but it did err in calculating the presumptively correct amount from which to depart. Concluding the district court erred as a matter of law by not calculating the presumptively correct child support obligation, we reverse and remand this issue to the district court.

## VII

[¶ 31] We reverse that part of the fourth amended judgment setting the child support obligation and remand for recalculation of the child support in accordance with this opinion, and we affirm the rest of the fourth amended judgment.

[¶ 32] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, and MARY MUEHLEN MARING, JJ., concur.