2006 ND 54

**Cory L. THOMPSON, Plaintiff
and Appellant**

v.

**Nikki L. OLSON, Defendant
and Appellee.**

**No. 20050091.**

Supreme Court of North Dakota.

March 29, 2006.

Suzanne M. Schweigert, Smith Bakke Oppegard Porsborg Wolf, Bismarck, N.D., for plaintiff and appellant.

Austin G. Engel Jr., Bismarck, N.D., for defendant and appellee.

MARING, Justice.

[¶ 1]   Cory L. Thompson appealed from an amended judgment granting Nikki L.

Olson custody of the couple's minor child and establishing a visitation schedule for Thompson. We conclude the trial court's decision to grant Olson's motion for change of custody is not clearly erroneous. We modify the visitation provisions of the amended judgment and affirm the amended judgment as modified.

I

[¶ 2] Thompson and Olson never married, but had a child ("Mary," a pseudonym) born in October 1998. Thompson lives in Washburn and Olson lives in the Bismarck–Mandan area. Olson moved into Thompson's home a few months before Mary was born. After the parties' relationship ended, Thompson sued Olson in 1999 to establish his paternity, to obtain custody of Mary, and to set visitation and establish Olson's child support obligation. In January 2000 Thompson and Olson stipulated to a split custody arrangement and agreed upon a visitation schedule, and the trial court entered a judgment incorporating the parties' stipulation.

[¶ 3] In May 2004 Olson moved to amend the judgment to grant her full custody of Mary with continued visitation for Thompson, and to set Thompson's child support obligation because "the beginning of [Mary's] formal education will require adjustments in visitation from month to month to accommodate [Mary's] school and other activities as she becomes older," and Thompson "is an argumentative and combative person who will refuse to agree on anything he believes curtails or controls in any way what he wants." At the hearing on the motion, the trial court limited each party to two hours and fifty minutes to present their cases. The evidence reflected that Mary was living one-half of the time in Washburn with her father and one-half of the time in the Bismarck–Mandan area with her mother. Thompson's house-

hold included his girlfriend and a son from a previous marriage. Olson was engaged to be married but was not living with her boyfriend.

[¶ 4] Following the hearing, the court found that a change of custody was required because Mary needed "to live with one parent in one community during the school week." The court applied the best interest factors under N.D.C.C. § 14–09–06.2 and found most favored neither party in the custody determination. The court found the factor based on the length of time the child has lived in a stable satisfactory environment and the desirability of maintaining continuity "slightly" favored Thompson, but only because of his girlfriend's efforts and because "Thompson has lived in the same house in Washburn." However, the court found that Thompson had committed two acts of domestic violence against Olson in August 1998 and in March 1999, triggering a presumption that Thompson not be awarded custody of Mary. The court further ruled "Thompson failed to present clear and convincing evidence that [Mary's] best interest require[s] him to have custody of [Mary]." The court awarded full custody to Olson, established a visitation schedule, and set Thompson's child support obligation.

II

[¶ 5] Thompson argues the trial court erred in restricting each party to two hours and fifty minutes to present their cases.

■ [¶ 6] A trial court has broad discretion over the presentation of evidence and the conduct of trial, but it must exercise its discretion in a manner that best comports with substantial justice. *Gullickson v. Kline*, 2004 ND 76, ¶ 15, 678 N.W.2d 138. A court may impose reasonable restrictions on the length of a hearing and the number of witnesses allowed. *Id.*

at ¶ 16. A court abuses its discretion only when the court employs a procedure which fails to afford a party a meaningful and reasonable opportunity to present evidence on the relevant issues. *Id.*

■ [¶ 7] The parties knew in advance that one day was scheduled for the hearing and Thompson did not seek to have more than one day allotted for the hearing. Thompson had an ample opportunity to plan his allocated time to accommodate his witnesses and presentation. Although Thompson claims he was unable to call three witnesses who were prepared to testify, he made no offer of proof of the specific testimony that he sought to introduce. Without a sufficient offer of proof, we are unable to review whether exclusion of the evidence was prejudicial. *See Forster v. West Dakota Veterinary Clinic*, 2004 ND 207, ¶ 43, 689 N.W.2d 366. Thompson also claims he was not given an opportunity to cross-examine Olson on rebuttal. However, the record shows Thompson did not object or request the court to allow him an opportunity to cross-examine Olson.

[¶ 8] Each party was given an equal amount of time to present their cases. Under the circumstances, we conclude Thompson was afforded a meaningful and reasonable opportunity to present evidence on the relevant issues.

### III

[¶ 9] The parties do not dispute that the beginning of Mary's education constituted a material change of circumstances requiring a change of custody. *See Woods v. Ryan*, 2005 ND 92, ¶ 9, 696 N.W.2d 508 (in deciding whether to change custody, the court must first consider whether there has been a material change of circumstances since the original custody decree, and if so, it must decide whether a change in custody is necessary to serve the best interests of the child); N.D.C.C. § 14–09–06.6(6). Rather, Thompson argues the trial court erred in finding he committed domestic violence sufficient to raise a presumption against awarding custody to him.

■ [¶ 10] In awarding custody in the best interests of the child, the court must consider the factors listed under N.D.C.C. § 14–09–06.2. *Lawrence v. Delkamp*, 2000 ND 214, ¶ 3, 620 N.W.2d 151. When there is credible evidence of domestic violence, it dominates the hierarchy of factors to be considered. *Id.* Section 14–09–06.2(1)(j), N.D.C.C., provides in relevant part:

> In awarding custody or granting rights of visitation, the court shall consider evidence of domestic violence. If the court finds credible evidence that domestic violence has occurred, and there exists one incident of domestic violence which resulted in serious bodily injury or involved the use of a dangerous weapon or there exists a pattern of domestic violence within a reasonable time proximate to the proceeding, this combination creates a rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded sole or joint custody of a child. This presumption may be overcome only by clear and convincing evidence that the best interests of the child require that parent's participation as a custodial parent. The court shall cite specific findings of fact to show that the custody or visitation arrangement best protects the child and the parent or other family or household member who is the victim of domestic violence.... As used in this subdivision, "domestic violence" means domestic violence as defined in section 14–07.1–01.

"Domestic violence" is defined in N.D.C.C. § 14–07.1–01(2) as including:

physical harm, bodily injury, sexual activity compelled by physical force, assault, or the infliction of fear of imminent physical harm, bodily injury, sexual activity compelled by physical force, or assault, not committed in self-defense, on the complaining family or household members.

A trial court's determination whether the domestic violence presumption is applicable is a finding of fact which will not be reversed unless it is clearly erroneous. *Gonzalez v. Gonzalez*, 2005 ND 131, ¶ 6, 700 N.W.2d 711. A finding of fact is clearly erroneous only if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after review of the entire record, we are left with a definite and firm conviction a mistake has been made. *Simburger v. Simburger*, 2005 ND 139, ¶ 12, 701 N.W.2d 880.

[¶ 11] The trial court found that the domestic violence presumption against granting custody to Thompson was triggered by two incidents:

The Court finds there has been domestic violence by Thompson against Olson. In her Application for a Domestic Violence Protection Order dated March 29, 1999, Olson related an earlier incident that occurred on or about August 9, 1998. Although she used the date July 9, 1998, Thompson put into evidence Plaintiff's Exhibit 7, which is a copy of a medical report from Turtle Lake Clinic dated August 10, 1998, for a perforated eardrum he received as a result of Olson slapping him in the ear during an altercation on August 9, 1998, thus establishing the date and that violence occurred. She reported that while she was pregnant with [Mary], Thompson assaulted her to get cigarettes away from her as he didn't want her to smoke while she was pregnant. Encouraging her not to smoke while pregnant was a good idea, but holding her to the ground and sitting on her stomach while trying to choke her gave her a self defense right to force him off of her. Thompson denies Olson's report of this incident, but the Court finds Olson's description of the event is more credible than Thompson's denial or his assertion that he was assaulted without provocation by Olson. The Court finds this incident of domestic violence did occur and did involve "the infliction of fear of imminent physical harm, bodily injury, sexual activity compelled by physical force, or assault, not committed in self-defense, on the complaining family or household members," as defined in NDCC 14–07.1–01(2).

The Court also finds Thompson inflicted "serious bodily injury" on Olson on March 27, 1999, when he threw her out of their house because he found a copy of a letter she had written to an inmate while she was working as a correctional officer. Clearly, writing such a letter was inappropriate and keeping a copy of it for Thompson to find was incomprehensible. Nevertheless, Thompson's subsequent actions were unlawful and resulted in bodily injury to Olson as shown by a copy of the McLean County Offense Report on the March 27, 1999, incident, which Thompson attached to his Affidavit of Cory Thompson dated June 18, 2004. . . . The report on page 2 lists photos taken of seven injuries, only one of which was to Thompson, that being a red scratch on his neck (the third photo listed). Attached to the Affidavit of Nikki L. Olson dated April 30, 1999, is a copy of an Emergency Room record from St. Alexius Medical Center of March 28, 1999, detailing bodily injuries she reported she received the previous day when she was assaulted by her boyfriend.

Both Olson and Thompson were charged with Disorderly Conduct, but

the charge against Olson was dismissed and Thompson pled guilty to the charge against him. Also attached to the Affidavit of Nikki L. Olson dated April 30, 1999, was a copy of a Domestic Violence Protection Order granted to Olson against Thompson along with copies of the application and temporary order. She testified she dropped the order about a month later so she could work out an arrangement with Thompson about [Mary], but that she is still, as of the date of the hearing, afraid of him. The Court finds there is "credible evidence that domestic violence has occurred, and there exists one incident of domestic violence which resulted in serious bodily injury." The Court finds Thompson committed Domestic Violence involving serious bodily injury against Olson. This factor favors Olson.

[¶ 12] In finding that Olson suffered "serious bodily injury" for purposes of applying the domestic violence presumption, the trial court reasoned Olson's injuries "were not dissimilar" to those suffered by the victim in *Schumacher v. Schumacher*, 1999 ND 149, ¶ 18, 598 N.W.2d 131. In *Schumacher*, this Court affirmed a trial court's finding that the husband committed domestic violence sufficient to invoke the rebuttable presumption based in part on an incident resulting in serious bodily injury to the wife. *Id.* at ¶ 18–19. We noted the trial court described "the serious bodily injury which occurred when Kurt attempted to take the wedding ring from Coreen's finger, including, the bruised eye and arms and torn hair from Coreen's head." *Id.* at ¶ 18.

[¶ 13] Thompson argues the "bruises" and "red marks" Olson suffered as a result of the March 27, 1999, incident do not rise to the level of serious bodily injury within the meaning of the domestic violence presumption statute. To support his argument, Thompson relies on *Morton County Soc. Serv. Bd. v. Schumacher*, 2004 ND 31, 674 N.W.2d 505; *Cox v. Cox*, 2000 ND 144, 613 N.W.2d 516; and *Dinius v. Dinius*, 1997 ND 115, 564 N.W.2d 300. In *Morton County*, at ¶¶ 14, 17, we upheld the trial court's finding that the father had not committed domestic violence based on the mother's claim that the father " 'grabbed her, injured her neck and drug her down some stairs,' " but the trial court had noted the mother's testimony was " 'discounted due to inconsistencies' " and " 'she did not seek immediate treatment for the alleged injuries.' " In *Cox*, at ¶¶ 19–20, we upheld the trial court's finding that the mother had not presented credible evidence of domestic violence involving serious bodily injury where she testified she received "bruises" to her "neck, knee, and leg," but presented no other evidence "addressing the seriousness of her injury." We said "[t]he trial court did not view this incident as having caused Christi Cox serious bodily injury, and we cannot say the trial court incorrectly evaluated the evidence in the record." *Id.* at ¶ 19. In *Dinius*, at ¶¶ 9, 19, "this Court reversed a trial court's finding that a father had committed acts of domestic violence against his daughter to invoke the presumption against custody by hitting her in the face in a dispute over washing dishes and pulling her from a car by grabbing her by the arm and hair." We noted the legislature granted "parents the right to use reasonable force to discipline their children," the two incidents occurred seven years ago and were "quite remote in time," and "there [wa]s no evidence suggesting either of these acts involved serious bodily injury or that the two suggest a pattern of domestic violence." *Id.* at ¶¶ 15, 19.

[¶ 14] In this case, the parties' versions of the incidents were conflicting and the trial court found Thompson's testi-

mony was not credible. Olson presented the McLean County Sheriff's Department offense report from March 27, 1999, in which an investigating officer reported that Olson told him Thompson "pushed her against the washer and a wall," that she "fell to the floor and Cory sat on top of her," that Olson grabbed Thompson's "shirt and told him to get off," and after getting off of her, Thompson "kicked her 3 times—twice in the left ribs and once in the hip area—left side." The officer noted Olson was "unsure how she got off the floor or when," but that Thompson "grabbed her and attempted to throw her outside" and "she hit the cement steps with her left elbow." The officer observed Olson "limped when walking around . . . favoring her left side." The report also noted Olson's injuries:

Injuries Observed: (photographs taken of injuries)

● right hand—red marks on top.

● right elbow—yellow bruising—2 red marks.

. . . .

● above left elbow—swollen—black and blue—fresh scratch.

● left chest—slightly red marks.

● left side—slight red marks.

● back—slightly red marks.

At the sheriff's office, Olson "complained of her ribs hurting and requested medical attention." She "agreed to get medical attention for her injuries" in Bismarck. The assessment of the emergency room physician was that Olson had "[c]ontusion of left hip, left rib, left arm secondary to alleged domestic assault." According to the offense report, Thompson "would not give a statement" because Thompson said, "it has not helped him [in] the past, and would be used against him in the future."

[¶ 15] The fact situations in *Schumacher*, *Morton County*, *Cox* and *Dinius* do not provide the benchmarks for what can and what cannot be considered serious bodily injury under the domestic violence statutes. Those cases merely stand for the proposition that whether injuries rise to the level of serious bodily injuries for purposes of applying the domestic violence presumption is a finding of fact which will not be reversed on appeal unless it is clearly erroneous. Here, the trial court viewed the March 27, 1999, incident as having caused Olson serious bodily injury, and we cannot say that the court incorrectly evaluated the evidence in the record or that the trial court's findings in this regard are clearly erroneous. *See Cox*, 2000 ND 144, ¶ 19, 613 N.W.2d 516.

[¶ 16] Thompson argues the trial court erred in failing to find that Olson committed domestic violence against him by perforating his eardrum in August 1998, in which case the domestic violence presumption might cease to exist. *See Krank v. Krank*, 529 N.W.2d 844, 850 (N.D.1995). However, the trial court found Olson, then pregnant, slapped Thompson in the ear in an act of self defense to force him off of her while Thompson sat on Olson's stomach and tried to choke her. Acts committed in self defense are statutorily excluded from the definition of domestic violence. *See* N.D.C.C. § 14–07.1–01(2); *Peters–Riemers v. Riemers*, 2002 ND 72, ¶ 16, 644 N.W.2d 197; *Huesers v. Huesers*, 1997 ND 33, ¶ 11, 560 N.W.2d 219. The trial court's finding that Olson was defending herself and her unborn child when she slapped Thompson is not clearly erroneous. Therefore, the court did not err in failing to find that Olson committed domestic violence in August 1998.

[¶ 17] Thompson argues the trial court erred in not finding that Olson committed domestic violence by spanking and slapping Mary across the face. Thompson

presented testimony from Olson's ex-boyfriend and Thompson's ex-wife that Olson occasionally spanked and slapped Mary to discipline the child. The trial court ordered Burleigh County Social Services to prepare a Child Protection Service Assessment Report concerning Mary because of various allegations made by the parties. The report indicated neither Olson nor Thompson abused or engaged in any inappropriate behavior with Mary and no services were recommended. The Bismarck Police Department investigated and found no evidence of criminal activity. With respect to allegations of physical abuse by Olson, the assessment report said, "[Mary] stated sometimes she is spanked or tapped lightly on the face for discipline by her mom." We conclude the trial court did not err in failing to find Olson committed domestic violence against Mary. *See Dinius,* 1997 ND 115, ¶ 15, 564 N.W.2d 300. ("Under N.D.C.C. § 12.1–05–05(1) the legislature grants parents the right to use reasonable force to discipline their children").

[¶ 18] Having reviewed the entire record, we conclude the trial court's finding that Thompson failed to present clear and convincing evidence that Mary's best interest required him to have custody is not clearly erroneous and, therefore, Thompson has failed to rebut the presumption against custody. We further conclude the court's finding that Mary's best interest will be served by Olson having custody with reasonable visitation for Thompson is not clearly erroneous.

### IV

[¶ 19] Thompson challenges parts of his visitation schedule. Thompson argues the trial court erred in inserting the following provision in the visitation schedule:

If Thompson fails to exercise any scheduled visitation without notifying Olson at least one hour in advance, or is more than one-half hour late to pick up [Mary], then his next scheduled visitation, whether it be weeknight, weekend, holiday or summer visitation, shall be automatically canceled, and shall not be replaced.

Olson agrees with Thompson that this provision should be deleted because it makes no allowances for unforeseen circumstances that may be beyond Thompson's control. We therefore order that this provision be deleted from the amended judgment.

[¶ 20] Thompson also argues the court erred in changing the visitation times and dates for holidays and birthdays. A trial court's decision to modify visitation is a finding of fact which will not be reversed unless clearly erroneous. *Hanson v. Hanson,* 2005 ND 82, ¶ 20, 695 N.W.2d 205. Thompson has not established that these changes to the visitation schedule made by the trial court are clearly erroneous.

### V

[¶ 21] We modify the amended judgment to delete the visitation provision providing for automatic cancellation of Thompson's next scheduled visitation upon certain conditions, and we affirm the amended judgment as modified.

[¶ 22] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, and CAROL RONNING KAPSNER, JJ., concur.

SANDSTROM, Justice, dissenting.

[¶ 23] Because it appears the district court failed to apply the correct legal standard for triggering the presumption against awarding custody to certain perpetrators of domestic violence, I dissent. I would reverse and remand for the district court to apply the correct law.

[¶ 24] Domestic violence is unacceptable, and it is a serious societal problem. *See Bruner v. Hager*, 534 N.W.2d 825, 829 (N.D.1995) (Sandstrom, J., concurring in the result); *Schestler v. Schestler*, 486 N.W.2d 509, 513 (N.D.1992) (Levine, J., dissenting). Children who grow up in a climate of domestic violence are adversely affected and are themselves more likely than others to grow up to be perpetrators of domestic violence. *See Hearing on H.B. 1393 Before the House Human Servs. Comm.*, 53d N.D. Legis. Sess. (Jan. 27, 1993) (exhibit to testimony of Bonnie Palecek, N.D. Council on Abused Women's Services, titled "Domestic Violence Fact Sheets" by the Nat'l Woman Abuse Prevention Project); *see also Schestler*, 486 N.W.2d at 514 (Levine, J., dissenting) ("the trial court denuded the statute of its good intent to put to rest ... the failure of courts to recognize that the abuse of one parent by another, even in the absence of physical abuse to the children, has serious detrimental effects on the children nonetheless....").

[¶ 25] In 1989, the North Dakota Legislative Assembly decided that domestic violence should be a factor in deciding child custody. 1989 N.D. Sess. Laws ch. 178, § 2. Subsequently, the legislature has struggled to determine when domestic violence should become the controlling factor when other factors would point the other way in the award of custody. *See id.;* 1993 N.D. Sess. Laws ch. 144, § 2; 1997 N.D. Sess. Laws ch. 147, § 2.

[¶ 26] *Schestler*, 486 N.W.2d 509, was a turning point. In *Schestler*, a majority of this Court upheld the award of custody of two children to a perpetrator of domestic violence and a child sexual abuser, reasoning that the presumption did not apply because he had not physically or sexually abused *those* children. *Id.* at 512; *see also Hearing on H.B. 1393 Before the House Human Servs. Comm.*, 53d N.D. Legis. Sess. (Jan. 27, 1993) (testimony of Carol Larson, Attorney for Wanda Schestler). The legislature reacted to *Schestler* by amending the statutes to create a rebuttable presumption that custody could not be awarded to a perpetrator of domestic violence. 1993 N.D. Sess. Laws ch. 144, § 2. This Court took the legislature at its word, and if the letter of the law was not clear enough, this Court made clear that the presumption applied no matter how slight the "violence," no matter how remote in time, and no matter how isolated the event may have been. *See generally Huesers v. Huesers*, 1997 ND 33, 560 N.W.2d 219; *Anderson v. Hensrud*, 548 N.W.2d 410 (N.D.1996); *Engh v. Jensen*, 547 N.W.2d 922 (N.D.1996); *Heck v. Reed*, 529 N.W.2d 155 (N.D.1995). This Court made clear that "pushing" someone's "buttons" was no excuse or justification. *Huesers*, at ¶ 11 (citing *Anderson*, 548 N.W.2d at 413–14; *Engh*, 547 N.W.2d at 926; *Heck*, 529 N.W.2d at 164). A spouse who could provoke one shove in anticipation of divorce was usually guaranteed custody, no matter how much the best interests of the child would be otherwise served by custody going to the other parent. *Hearing on S.B. 2235 Before the Senate Judiciary Comm.*, 55th N.D. Legis. Sess. (Jan. 29, 1997) (testimony of Bonnie Palecek, N.D. Council on Abused Women's Services).

[¶ 27] Many of those who had promoted the earlier legislation went to the 1997 legislature for a mid-course correction. *Hearing on S.B. 2235 Before the Senate Judiciary Comm.*, 55th N.D. Legis. Sess. (Jan. 29, 1997) (testimony of Sherry Mills Moore, State Bar Ass'n of N.D. Family Law Task Force). At their urging, the legislature changed the law so that domestic violence was always a factor to be considered in the award of custody, but only "serious" domestic violence would trigger the presumption. 1997 N.D. Sess. Laws ch. 147, § 2. To trigger the presump-

tion the legislature said there had to be a pattern of domestic violence reasonably proximate in time, serious bodily injury, or the use of a dangerous weapon. *Id.*

[¶ 28] In this case, the "serious bodily injury" was found by the district court. The legislature has told us how to interpret the term. The legislature tells us that when a term in the North Dakota Century Code is given a definition in the code that definition applies to other uses of that term. N.D.C.C. § 1–01–09. The legislature has told us that when it uses a term with an established definition, that is what it means. N.D.C.C. § 1–02–02.

[¶ 29] In N.D.C.C. § 12.1–01–04(29), the legislature had defined "serious bodily injury" to mean "bodily injury that creates a substantial risk of death or which causes serious permanent disfigurement, unconsciousness, extreme pain, permanent loss or impairment of the function of any bodily member or organ, or a bone fracture." The term also has an established meaning. Black's Law Dictionary defines "serious bodily injury" to mean "[s]erious physical impairment of the human body; esp., bodily injury that creates a substantial risk of death or that causes serious, permanent disfigurement or protracted loss or impairment of the function of any body part or organ." *Black's Law Dictionary* 802 (8th ed.2004).

[¶ 30] Even though we need not look to it, the legislative history reflects that these are the definitions it contemplated. When the Judiciary Committee inquired what "serious bodily injury" meant, the bill drafters responded that the definition of serious bodily injury found in the criminal code at N.D.C.C. § 12.1–01–04(29) was the definition they contemplated. *Hearing on S.B. 2235 Before the Senate Judiciary Comm.,* 55th N.D. Legis. Sess. (Jan. 29, 1997) (testimony of Sherry Mills Moore, State Bar Ass'n of N.D. Family Law Task Force). The drafters considered including the definition in the bill but decided not to so the statute would not be exclusively limited to that definition and the court to look to other accepted definitions. *Id.* (testimony of Sherry Mills Moore, State Bar Ass'n of N.D. Family Law Task Force, and Lee A. Christofferson, District Judge). Therefore, the legislature intended the court to look to N.D.C.C. § 12.1–01–04(29) and other accepted definitions such as Black's Law Dictionary.

[¶ 31] The evidence before the district court was that Olson had red marks, bruises, and scratches. She did not go to a doctor until the next day. The medical report reflects that Olson's injuries were "Contusion of left hip, left rib, [and] left arm secondary to alleged domestic assault." According to the medical report, Olson's treatment plan included missing one day of work and icing her bruised hip.

[¶ 32] The district court applied the presumption even though the evidence makes application of the presumption questionable. Although Thompson's conduct is inexcusable, the evidence reflects that Olson's injuries were not serious. The evidence does not support a finding that the injuries created "a substantial risk of death" or caused "serious permanent disfigurement, unconsciousness, extreme pain, permanent loss or impairment of the function of any bodily member or organ," or broken bones.

[¶ 33] As Justice Levine wrote in *Schestler,* "I would reverse this case and remand it to the trial judge with a simple instruction to do it over and do it right. I would request that he apply the statute in the way it was intended by the legislature." 486 N.W.2d at 515 (Levine, J., dissenting).

[¶ 34] Dale V. Sandstrom