2008 ND 62

**Kari Jane WESSMAN, Plaintiff, Appellant and Cross– Appellee**

v.

**Bradley Dale WESSMAN, Defendant, Appellee and Cross–Appellant.**

No. 20070069.

Supreme Court of North Dakota.

March 31, 2008.

man's petition for protective order. After the hearing, the district court issued a memorandum opinion and order finding that domestic violence had occurred. A domestic violence protection order was entered on October 25, 2005, and issued for a period of one year. Before its expiration, Kari Wessman moved to extend the protection order. In December 2006, however, the parties agreed to the entry of a civil restraining order in the divorce action as a part of an interim order. The domestic violence protection order was also specifically terminated by a December 2006 order.

[¶4] The district court held a divorce and custody trial in January 2007. After the trial, the court issued findings of fact, conclusions of law, and an order for judgment, in which the court, among other things, awarded the parties joint legal and physical custody of the children and awarded Bradley Wessman spousal support. The divorce judgment was entered in February 2007, from which the parties now appeal.

Jerilynn Brantner Adams, Vogel Law Firm, Fargo, N.D. for plaintiff, appellant and cross-appellee.

Stephen R. Dawson, Fargo, N.D., for defendant, appellee and cross-appellant.

MARING, Justice.

[¶1] Kari Wessman appeals and Bradley Wessman cross-appeals, from a divorce judgment awarding the parties joint legal and physical custody of their children and awarding Bradley Wessman spousal support. We affirm the district court's award of spousal support to Bradley Wessman and decision not to order counseling for the parties' minor children. However, because we conclude the district court failed to make necessary findings regarding alleged domestic violence, we reverse the court's custody decision and remand for further proceedings.

I

[¶2] Kari Wessman and Bradley Wessman were married in 1987, and during the course of their marriage, they had three daughters. In September 2005, Kari Wessman commenced this divorce action. At that time, Kari Wessman also served Bradley Wessman with a petition for protective order and a temporary domestic violence protection order.

[¶3] In October 2005, a hearing was held in the district court on Kari Wess-

II

[¶5] In his cross-appeal, Bradley Wessman asserts the amount of spousal support awarded to him is clearly erroneous. Here, the district court awarded Bradley Wessman spousal support of $2,500 per month for fifteen years.

[¶6] The district court's spousal support determinations are findings of fact, and its decision on spousal support will not be set aside on appeal unless clearly erroneous. *Donlin v. Donlin*, 2007 ND 5, ¶15, 725 N.W.2d 905. The district court must consider the relevant factors under the *Ruff–Fischer* guidelines in determining spousal support. *Sack v. Sack*, 2006 ND 57, ¶12, 711 N.W.2d 157. "Property division and spousal support are interrelated and intertwined and often must

be considered together." *Kostelecky v. Kostelecky*, 2006 ND 120, ¶ 14, 714 N.W.2d 845.

[¶ 7] In equitably dividing the parties' marital property, the court awarded Kari Wessman total assets of $1,013,566.60 and total debts of $464,010.70, resulting in a net award of $549,555.90. The court awarded Bradley Wessman total assets of $557,055.90 and total debts of $7,500.00, resulting in a net award of $549,555.90. The court thus awarded the parties' assets and debts such that the net to each party is equal. In awarding Bradley Wessman spousal support, the district court considered the *Ruff–Fischer* guidelines, including Bradley Wessman's take home pay and amounts he will receive in child support. The district court specifically found that Bradley Wessman was going to need assistance to meet his monthly expenses and to further his education, concluding $2,500 per month for at least fifteen years was a reasonable sum.

[¶ 8] Based upon our review of the record in light of the *Ruff–Fischer* guidelines, the facts as established in this case, and the distribution of the parties' marital property, we conclude the district court's spousal support award to Bradley Wessman of $2,500 per month for fifteen years was not clearly erroneous.

### III

[¶ 9] Kari Wessman argues on appeal that the district court erred in failing to order counseling for the children. We have previously recognized the district court's discretion to order a child to receive counseling if it is in a child's best interests. *Hendrickson v. Hendrickson*, 2000 ND 1, ¶ 23, 603 N.W.2d 896; *see also Johnson v. Schlotman*, 502 N.W.2d 831, 835–36 (N.D.1993). We have also concluded the court may even order counseling for

a child's parent if it is in the child's best interests. *Hendrickson*, at ¶ 23.

[¶ 10] In this case, however, the district court rejected Kari Wessman's request for the court to order counseling for the children. The court instead found one of the children to be a "well adjusted teenager" and concluded that "Bradley and Kari need to make these decisions having the best interests of the children in mind." Thus, the district court did not conclude that the children were not to receive counseling, but rather left the decision of the children's best interests on this issue to Bradley Wessman and Kari Wessman. We conclude the district court did not abuse its discretion by not ordering the children to attend counseling.

### IV

[¶ 11] Kari Wessman asserts the district court erred in awarding the parties joint physical custody of their minor children. She argues the court clearly erred in finding there was no evidence of domestic violence which would trigger the rebuttable presumption under N.D.C.C. § 14–09–06.2(1)(j).

[¶ 12] A district court's award of custody is treated as a finding of fact and, on appeal, will not be reversed unless it is clearly erroneous under N.D.R.Civ.P. 52(a). *Gietzen v. Gabel*, 2006 ND 153, ¶ 6, 718 N.W.2d 552. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after review of the entire record, we are left with a definite and firm conviction a mistake has been made. *Thompson v. Olson*, 2006 ND 54, ¶ 10, 711 N.W.2d 226.

[¶ 13] "Under N.D.C.C. § 14–09–06.1, a district court must award custody of a child to the person who will promote the best interests and welfare of the

child." *Gietzen*, 2006 ND 153, ¶ 7, 718 N.W.2d 552. In awarding custody in the best interests and welfare of a child, the district court must consider the factors outlined by N.D.C.C. § 14–09–06.2. *Thompson*, 2006 ND 54, ¶ 10, 711 N.W.2d 226. Although the court has substantial discretion in a custody decision, the court must consider the relevant factors in N.D.C.C. § 14–09–06.2(1)(a)–(m). *Cox v. Cox*, 2000 ND 144, ¶ 10, 613 N.W.2d 516. A separate finding is not required for each statutory factor, but the court's findings must be stated with sufficient particularity so this Court can understand the factual basis for the district court's decision. *Id.* When there is credible evidence of domestic violence, however, it dominates the hierarchy of factors to be considered. *Thompson*, at ¶ 10; *Lawrence v. Delkamp*, 2000 ND 214, ¶ 3, 620 N.W.2d 151.

[¶ 14] Section 14–09–06.2(1)(j), N.D.C.C., creates a rebuttable presumption against awarding custody of a child to a domestic violence perpetrator and, in relevant part, provides:

> In awarding custody or granting rights of visitation, the court shall consider evidence of domestic violence. If the court finds credible evidence that domestic violence has occurred, and there exists one incident of domestic violence which resulted in serious bodily injury or involved the use of a dangerous weapon or there exists a pattern of domestic violence within a reasonable time proximate to the proceeding, this combination creates a rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded sole or joint custody of a child. This presumption may be overcome only by clear and convincing evidence that the best interests of the child require that parent's participation as a custodial parent. The court shall cite specific findings of fact to show that the custody or visitation arrange-

ment best protects the child and the parent or other family or household member who is the victim of domestic violence. . . . The fact that the abused parent suffers from the effects of the abuse may not be grounds for denying that parent custody. As used in this subdivision, "domestic violence" means domestic violence as defined in section 14–07.1–01. *A court may consider, but is not bound by, a finding of domestic violence in another proceeding under chapter 14–07.1.*

(Emphasis added.)

[¶ 15] "Domestic violence" is defined in N.D.C.C. § 14–07.1–01(2) and includes: "physical harm, bodily injury, sexual activity compelled by physical force, assault, or the infliction of fear of imminent physical harm, bodily injury, sexual activity compelled by physical force, or assault, not committed in self-defense, on the complaining family or household members." The district court's determination whether the N.D.C.C. § 14–09–06.2(1)(j) domestic violence presumption is applicable is a finding of fact, which will not be reversed on appeal unless clearly erroneous. *Gonzalez v. Gonzalez*, 2005 ND 131, ¶ 6, 700 N.W.2d 711.

[¶ 16] "When a district court addresses whether evidence of domestic violence triggers the presumption under that statute, we require specific findings and conclusions regarding the presumption so we are not left guessing as to the court's rationale regarding the application of the presumption." *Gietzen*, 2006 ND 153, ¶ 9, 718 N.W.2d 552 (citing *Gonzalez*, 2005 ND 131, ¶ 6, 700 N.W.2d 711). Although specific factual findings are not required when evidence of domestic violence does not rise to the level to trigger the domestic violence presumption, that evidence can still be considered by the court as one of the

best interest factors. *Id.* (citing *Cox*, 2000 ND 144, ¶ 17, 613 N.W.2d 516).

[¶ 17] In this case, there were prior proceedings on Kari Wessman's petition for a domestic violence protection order, which took place before a different judge in the district court. In deciding to grant Kari Wessman's petition for restraining order against Bradley Wessman for a period of one year, that judge found that "[t]he alleged sexual assaults on August 22, 2005 and September 8, 2005 were proved to be acts of domestic violence." Based on these findings, the district court issued a domestic violence protection order under N.D.C.C. ch. 14–07.1. When considering the domestic violence presumption under N.D.C.C. § 14–09–06.2(1)(j) in awarding custody, the district court "may consider, but is not bound by, a finding of domestic violence in another proceeding under chapter 14–07.1." This case, however, presents a somewhat unique circumstance because the parties at the divorce trial both agreed to have the district court take judicial notice of the file from the prior proceedings for the domestic violence protection order.

[¶ 18] Here, during the divorce trial, the parties had the following exchange with the court:

MR. ANDERSON: Your Honor, I might ask the Court to take judicial notice of—I'll give you the file number which is the protection order filed, Your Honor, wherein the Court makes specific findings on the—just the issues.

THE COURT: The issue that she's testifying to?

MR. ANDERSON: Testifying to and found those to be not proven.

THE COURT: And that's in a different file than this one?

MR. ANDERSON: It is.

THE COURT: You have that file number?

MR. ANDERSON: I do.

MS. BRANTNER ADAMS: Your Honor, I do have copies of the memorandum decision and the domestic violence protection order that I'll be entering as an exhibit.

THE COURT: As an exhibit. Well, maybe that will take care of it, Mr. Anderson.

MR. ANDERSON: It's 09–05–R–909. And we would ask the Court to take judicial notice of all the filings and the Court's decision and memorandum opinion in that file.

MS. BRANTNER ADAMS: And we would have absolutely no objection to that.

THE COURT: The Court will take judicial notice of that file. You may continue, Ms. Adams.

MS. BRANTNER ADAMS: Thank you, Your Honor.

[¶ 19] This Court has said that the district court "may take judicial notice of evidence presented in a closely related case, particularly when the judge and parties are the same in both proceedings." *Frisk v. Frisk*, 2006 ND 165, ¶ 22, 719 N.W.2d 332; *see also State v. Bergstrom*, 2006 ND 45, ¶ 18, 710 N.W.2d 407. In *Frisk*, at ¶ 22, we explained:

When one party requests the court take judicial notice, upon notice of that request, the opposing party has advance warning that judicial notice is being contemplated. 1 *Weinstein's Fed. Evid.*, § 201.30[4], p. 201–63 (2d ed.2006). Parties have the right to challenge the court's decision to take judicial notice, but the burden is on the challenging party to request the opportunity to be heard. N.D.R.Ev. 201(e); *Bender v. Beverly Anne, Inc.*, 2002 ND 146, ¶ 5, 651 N.W.2d 642. A request for an opportunity to be heard to challenge the

court's decision to take judicial notice may be made after judicial notice has been taken if there was no prior notification of the court's intent to take judicial notice. N.D.R.Ev. 201(e).

However, "[t]he court may only take judicial notice of the evidence as presented, and not for the truth of the matters asserted by the evidence." *Bergstrom,* at ¶ 18 (citing *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.,* 969 F.2d 1384, 1388 (2d Cir.1992) ("A court may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'") (internal citation omitted)).

[¶ 20] In this case, in its memorandum opinion and order after the divorce trial, the district court awarded joint legal and physical custody of the three minor daughters to Kari Wessman and Bradley Wessman. The memorandum opinion specifically addresses the "best interests" factors for determining custody. In its analysis of factor (j), relating to the issue of domestic violence, the district court stated:

> As the Court has intimated, in a Protection Order, the [prior] Court entered a Memorandum Opinion and Order finding in part as follows:
>
>> Brad did cause a bruise to Kari's right lower thigh on August 22, 2005, as well as bruises on Kari's upper arms on September 2, 2005. Brad did grab Kari's buttock and breasts on August 21, 2005, and in July of 2005. . . .
>
>> In the present case, Kari has proved acts of domestic violence occurring in August and September, 2005, which resulted in bruises to her upper arms and lower inner thigh. Kari also proved acts of domestic violence in July and August, 2005, relating to the grabbing of the Petitioner's breasts and buttock.

At trial, Bradley testified that the bruises on Kari's body were caused by other events which he does not know of. He denies the events that were found to be true in the Court's Findings of Fact in connection with the Protection Order. "A court may consider, but is not bound by, a finding of domestic violence in another proceeding under Chapter 14–07.1." N.D.C.C. § 14–09–06.2(j).

Kari testified that Bradley had pushed and shoved her. She testified that he had shoved her down the steps at the lake. He had shoved her into a shed. She testified that she thought she had a broken rib, a fractured knee and broken fingers from Bradley's actions. She testified that there was sexual abuse. Admittedly, however, these events all occurred when Kari had been drinking. Bradley testified that any arguments that the two of them had were over Kari's use of alcohol. He testified that Kari would do things that she would not even remember the next morning. He testified that on August 1, 2005, they had consensual intercourse and that's when he first noticed the bruise that she had on her inner thigh. She reported to him that she had gotten those bruises hitting a table. There were other occasions when he would come home and could not find Kari, and would find her in the backyard drunk. Sometimes she would come in with bruises. He testified that when Kari drank, her behavior became bizarre. There was no independent corroboration of any domestic violence.

Bradley did acknowledge that on one occasion he did grab Kari's buttocks and breasts. He also restrained her when she would attack him. The Court finds Bradley's testimony credible in this regard. Kari's testimony in this regard is suspect, partly because her problem

with drinking at the time, and the lack of any medical records to suggest that she incurred any of the injuries that she said that she did.

. . . .

Here, the Court finds that there were no incidents of domestic violence that resulted in serious bodily injury. The court further finds that there were no incidents of domestic violence which involved the use of a dangerous weapon. The Court further finds that there exists no pattern of domestic violence within a reasonable time proximate to the proceeding. Therefore, the Court concludes there is no triggering event to create the rebuttable presumption. On the other hand, Bradley admitting grabbing Kari's buttocks and breasts is evidence, of domestic violence. . . .

Although the Court finds that the grabbing of Kar[i]'s buttocks and breasts by Bradley do not trigger the presumption, it does constitute evidence of domestic violence.

Accordingly, this factor favors Kari.

[¶ 21] The district court found that Kari Wessman testified there was sexual abuse and found that Bradley Wessman testified the parties had consensual intercourse on August 1, 2005, in addition to considering bruises Kari Wessman purported to receive on August 22, 2005, and September 2, 2005. The district court, however, did not address with specific findings the two incidents of alleged sexual assault occurring on August 22, 2005, and on September 8, 2005, specifically found by the court in the domestic violence protection order proceedings to be domestic violence. In addition to taking judicial notice, Kari Wessman's sworn petition for protective order, the court's previous memorandum opinion and order, and the domestic violence protection order were all admitted into evidence as exhibits without objection.

Both parties also testified during the divorce trial in some respect, albeit without great detail, as to the two instances of alleged sexual abuse found by the court in the prior domestic protection order proceedings.

[¶ 22] While the district court in the divorce action may not be bound by these prior findings, because the court took judicial notice of the prior domestic violence proceedings and there is testimony relating to the alleged sexual assaults, the court must at least make specific findings addressing whether these two alleged incidents constituted domestic violence for purposes of N.D.C.C. § 14–09–06.2(1)(j). Because specific findings are necessary relating to evidence of the alleged sexual assaults on August 22, 2005, and September 8, 2005, we reverse the award of joint physical custody and remand the case for additional findings of fact.

[¶ 23] Specifically, on remand, the district court should address in its findings whether the alleged sexual assaults on these two dates actually occurred. If the district court finds, as the court did in the prior domestic violence protection order proceedings, that one or both of these acts occurred, then the district court must make specific findings as to whether the act or acts trigger the domestic violence presumption under N.D.C.C. § 14–09–06.2(1)(j). If the court finds the presumption was triggered based upon one or both of these two incidents, the district court must make findings whether Bradley Wessman rebutted the presumption by clear and convincing evidence. We leave to the district court's sound discretion whether to open the record for further evidence on these two specific incidents.

[¶ 24] Kari Wessman has also argued on appeal that the district court erred in failing to consider Bradley Wessman's alcohol abuse, improperly considered the ef-

fects of domestic violence perpetrated by Bradley Wessman against her in denying her full physical custody of the children, and improperly ignored evidence of alienating behavior. Because we are remanding this case for further findings, the district court may also decide whether it is necessary to open the record for further evidence on these issues as well.

## V

[¶ 25] The district court judgment is affirmed in part, reversed in part, and remanded for additional factual findings on the issue of two specific incidents of alleged domestic violence on August 22, 2005, and September 8, 2005, with regard to the district court's custody decision.

[¶ 26] GERALD W. VANDE WALLE, C.J., WILLIAM F. HODNY, S.J., JOHN C. McCLINTOCK, JR., D.J., RONALD E. GOODMAN, S.J., concur.

[¶ 27] The Honorable WILLIAM F. HODNY, S.J., the Honorable JOHN C. McCLINTOCK, JR., D.J., and the Honorable RONALD E. GOODMAN, S.J., sitting in place of KAPSNER, J., SANDSTROM, J., and CROTHERS, J., disqualified.